IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LORENZO EDWARD NEAVES,

Petitioner,

vs.

TAMMY FOSS, Acting Warden, Salinas
Valley State Prison,[1]

Respondent.

No. 2:16-cv-02780-JKS

MEMORANDUM DECISION

Lorenzo Edward Neaves, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Neaves is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at Salinas Valley State

Prison.  Respondent has answered, and Neaves has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On May 30, 2012, Neaves was charged with various sexual offenses committed against

his girlfriend's 9-year-old daughter, T.M.  Specifically, Neaves was charged with lewd and

lascivious acts upon a child 10 years of age or younger (Count 1), oral copulation with a child 10

years of age or younger (Count 2), and digital penetration of a child 10 years of age or younger

(Count 3).  The information further alleged as a prior strike conviction that Neaves was

previously convicted of a serious felony (first degree burglary).  Neaves pled not guilty to the

charges and the enhancement and proceeded to a jury trial on June 4, 2012.  On direct appeal of

[1]      Tammy Foss is substituted for William Muniz as Acting Warden, Salinas Valley
State Prison.  FED. R. CIV. P. 25(d).

his conviction, the California Court of Appeal laid out the following facts underlying the charges

against Neaves and the evidence presented at trial:

**Prosecution's Case**

**Charged Acts**

In July 2011, Ty.L. was living in an apartment with her nine-year-old daughter T.M., her two sons aged four and five, a female roommate, and [Neaves] who was her boyfriend. On July 7, several people were partying at the apartment because Ty.L. was moving out. Catherina Wilson and her boyfriend, Charles Fisher, were at the apartment and were intending to stay the night. Ty.L. told Wilson that when she and Fisher wanted to lie down she could take T.M. off of the bed and put her on the couch in the living room. Around 10:00 or 11:00 p.m., Wilson put T.M. on the couch.

T.M. testified that while she was sleeping on the couch, she was awakened by [Neaves] kneeling beside her and taking off her pajamas, which consisted of a combination skirt and shirt and her underwear. [Neaves] touched her vagina with his hand, poked inside her vagina with his finger, which hurt, and licked her vagina. This activity lasted about 10 minutes. [Neaves] told her not to tell anyone and then went back into Ty.L.'s bedroom. T.M. cried, put her skirt and underwear back on, but got her underwear on backwards, which others noticed after she got up in the morning.

That same morning, T.M. told her mother and several others that "Gator," [Neaves'] nickname, had used his hand to open her vagina and then licked her vagina. An investigating officer testified that T.M. told him that [Neaves] had orally copulated her, but she denied that digital penetration had occurred. T.M. denied having told the officer that digital penetration had not occurred.

**Uncharged Acts**

Nathan B., 24 years old at the time of trial, testified he was [Neaves'] brother. Nathan denied that [Neaves] had done anything to him sexually when he was eight or nine years old. However, David Ford, formerly a detective with the Sacramento Police Department, testified that when Nathan was nine years old he interviewed him at an elementary school regarding his having been sexually assaulted. Nathan told Ford that while Nathan was lying on the bed in [Neaves'] bedroom playing with some puppies, [Neaves] masturbated and got "cum" on one of the puppy's heads. [Neaves] then "made the dog suck his penis." [Neaves], who was wearing boxer shorts, then got behind Nathan and started humping him. Nathan told their mother and she called the police. Nathan B. also told Ford that when he was eight years old, [Neaves] got into the shower with him and put "the dick on my bootie and pushed it inside my butt."

Jessica J., 26 years old at the time of trial, testified that in March 1999 she was about 13 years old and a student in junior high school and had gone to Rancho Cordova High School looking for her cousin and a friend when she saw [Neaves], with whom she was acquainted. [Neaves] offered to help her look and took her hand. As they walked by a bathroom [Neaves] pushed her partway into it, grabbed her hand and put it down his pants. When she pulled away he tried to unbutton her pants, but she was able to pull

2

away and run. After finding and telling her friend what happened, she was taken to the office to report the matter to the police.

**Defense Case**

Tianna Saffel, who was pregnant with [Neaves'] child, testified that about a week after [Neaves] purportedly molested T.M. she moved with him to Reno. There, they had an on-and-off relationship until he was arrested in October 2011 on the molestation charge. While in Reno, [Neaves] received text messages and naked photographs from a cell phone with a phone number similar to Ty.L.'s. Saffel also overheard the woman say, "You are not with me, how could you leave us, how could you leave my children." After [Neaves'] arrest, Saffel examined [Neaves'] cell phone and discovered text messages that he was still communicating in a romantic way with the woman who she believed was Ty.L.

[Neaves'] mother, Lynette Baker, testified that Ty.L. called her and asked her to come to Ty.L.'s apartment. Baker complied and Ty.L. took her into a bedroom and told her that [Neaves] had touched her daughter. Baker asked Ty.L. if she had called the police and she responded that she had not. Baker asked T.M. what happened and T.M. said that [Neaves] had touched her. Baker went home and, for the purpose of protecting [Neaves], called the police.

The next day, Ty.L. came to Baker's apartment and told Baker that she had made up the accusations against [Neaves] because she did not want [Neaves] to move with her. Ty.L. was chuckling as she told this to Baker. Baker told Ty.L. that she should call the police and let them know the accusations were made up.

Patricia Antonetti testified that she was an employee of Folsom Cordova Unified School District and [Neaves] was one of the students she worked with. In March of 1999 she saw [Neaves] and a female against a wall hugging and kissing. Antonetti had no recollection of whether force was being used, but stated if the contact had appeared forceful she would have intervened.

*People v. Neaves*, No. C071676, 2015 WL 4198776, at \*1-2 (Cal. Ct. App. July 13, 2015).

At the conclusion of the 10-day trial, the jury found Neaves guilty of oral copulation, but not guilty of the other two charges. Neaves waived jury trial on the prior conviction allegation, and the trial court found it to be true. The court subsequently sentenced Neaves to 15 years to life imprisonment, doubled due to the prior conviction to 30 years to life.

Through counsel, Neaves appealed his conviction, arguing that the trial court erred by: 1) instructing the jury to continue deliberating after it declared itself deadlocked; 2) admitting evidence of Neaves' uncharged sexual offenses; and 3) miscalculating his presentence custody

credits by two days. Respondent agreed that the trial court should have awarded two additional days of credit but otherwise opposed the appeal. On July 13, 2015, the Court of Appeal issued a reasoned, unpublished opinion modifying the abstract of judgment to accurately reflect the amount of presentence custody earned and unanimously affirming the judgment against Neaves in all other respects. *Neaves*, 2015 WL 4198776, at *6. The California Supreme Court summarily denied review on September 16, 2015.

Neaves then filed in the California Superior Court a *pro se* petition for writ of habeas corpus that alleged that the prosecutor committed misconduct by: 1) referring to uncharged prior allegations from his juvenile history; 2) intentionally and in bad faith failing to collect or preserve evidence potentially favorable to the defense; and 3) knowingly using perjured evidence. He also averred that trial counsel was ineffective in failing to subpoena the doctor who treated the victim, whose testimony he claims would have proven his innocence. The Sacramento County Superior Court denied the claims on both procedural grounds and on the merits in a reasoned, unpublished decision issued on September 21, 2016. Neaves raised the same claims in a *pro se* habeas petition in the California Supreme Court, which was denied without comment on October 26, 2016.

Neaves timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on November 18, 2016. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Neaves argues that: 1) the trial court improperly coerced a verdict by instructing the jury to continuing deliberating after it declared itself

deadlocked; 2) the trial court wrongfully admitted evidence of prior uncharged sexual offenses;

3) the prosecution committed misconduct; and 4) trial counsel rendered ineffective assistance.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.        Verdict Coercion

Neaves first argues that the trial court improperly coerced a verdict by instructing the jury pursuant to *People v. Moore*, 117 Cal. Rptr. 2d 715, 724-26 (Cal. Ct. App. 2002), over Neaves' objection, to continue deliberating after it had declared itself deadlocked. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> Trial testimony was given over four days, ending on June 11, 2012. On June 12 the trial court completed instructing the jury and the jury commenced deliberations. On June 13, at noon, the jury sent the court a note stating the jury could not come to a unanimous decision. The court informed the parties that it was going to give "the

Firecracker instruction," an instruction approved by this court in *Moore*, which directed the jury to continue deliberations. [Neaves] objected on grounds that giving the instruction "invades the province of the jury" and "impermissibly intrudes on the jury's deliberations" in violation of federal and state due process and equal protection clauses. Unswayed, the trial court gave the *Moore* instruction, which, in its entirety, read as follows:

"In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine their's. You should not hesitate to change a view you once held if you are convinced it is wrong, or to suggest that other jurors change their views if you are convinced they are wrong.

"Fair and effective jury deliberations require a frank and forthright exchange of views. I remind you of that discussion we had earlier about the ideal juror respecting the views of every jurors [sic ] and respecting their own views.

"As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charges, *if* you can do so without violence to your individual judgment.[FN2]

> FN2. In the original reporter's transcript filed in this case the last sentence of the quote omitted the italicized "if" and [the] instruction read: "It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charges. You can do so without violence to your individual judgment." After the briefs in this case were filed, the court reporter filed a correction to the transcript such that the instruction reads as we have quoted. Relying on the uncorrected version of the instruction, [Neaves] has argued the instruction's omission of the word "if" caused the instruction to become "improperly coercive." Although we have not heard anything from [Neaves] with regard to the reporter's correction, the corrected record obviates the need for us to address this argument.

"Both the People and the defendant are entitled to the individual judgment of each juror. As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate.

"May I suggest that since you have been under—since you have not been able to arrive at a verdict using the method you have chosen that you consider changing the methods you have been following, at least temporarily and trying new methods.

"For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role

playing by having those on one side of an issue present and argue the other side's position and vice versa. This might enable you to better understand the other's positions.

"My suggestion you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to conduct your deliberations. I merely suggest that you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

"I also suggest you re-read CALCRIM Instruction 200, CALCRIM Instruction 3550. These Instructions pertain to your duties as jurors, and they make recommendations on how you should deliberate.

"The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by the instructions.

"CALCRIM Instruction 200 defines duties of a juror.

"The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial, and not from any other source.

"A fact is something proved by the evidence or by stipulation. Second, you must apply the law I state to you to the facts as you determine them, and in this way arrive at your verdict. You must accept and follow the law as I state it to you regardless of whether you agree with the law.

"If anything concerning the trial said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

"CALCRIM 3550 defines the jury's duty to deliberate and recommends how jurors should approach their task. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court. These are matters—these are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

"You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments and suggestions I have made in the instructions now presented to you. I hope my comments and suggestions may have been some assistance to you.

"You are ordered to continue your deliberations at this time. If you have any other questions, concerns, requests, or any communication you desire to report to me, please put those in writing on the form my bailiff has provided you with. Have them signed and dated by your foreperson, and then please notify the bailiff." (Italics added.)

[Neaves] argues the *Moore* instruction was coercive because it indicated the court's preference for a verdict, told the jurors to reexamine their view and change it if they were convinced that it was wrong, told them that it was their duty to deliberate with

8

the goal of reaching a verdict, and failed to give the jury a cautionary instruction that a hung jury was a permissible result. The argument is meritless.

As to [Neaves'] complaint that the instructions show the court's "preference for a verdict," rule 2.1036 of the California Rules of Court[FN3] supports such a preference. Rule 2.1036 provides in pertinent part: "After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while keeping an open mind and talking about the evidence with each other." In accordance with rule 2.1036, the court instructed the jury as follows: "As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charges, if you can do so without violence to your individual judgment."

There is no significant distinction between rule 2.1036 and the instruction given by the court. Both the rule and instruction simply represent the common-sense proposition that to the extent one becomes convinced that their position is wrong, change it.

As to [Neaves'] complaint that the *Moore* instruction was coercive because "[i]t told [the jury] that it was their duty to deliberate with a goal of reaching a verdict" without informing them "that a hung jury was a permissible result," again he is wrong. In *People v. Gurule* (2002) 28 Cal.4th 557, the California Supreme Court observed that such an instruction need not be given because it could "improperly diminish[ ] the jury's duty to deliberate and reach a verdict if possible." (*Id.* at p. 660.) Accordingly, there was no error in not so instructing the jury.

Finally, we note, as do the People, that [Neaves'] citations to *United States v. Bonam* (9th Cir. 1985) 772 F.2d 1449, at page 1450, and *United States v. Mason* (9th Cir. 1981) 658 F.2d 1263, at page 1268, as authorities for the proposition that the trial court's failure to instruct the jury that a hung jury was a permissible result, "weighs heavily in favor of the conclusion that the defendant's right to a fair trial and impartial jury has been violated," do not stand for any such proposition. Nor has our research disclosed any case that does.

In sum, [Neaves] has failed to establish that the *Moore* instruction was coercive in any aspect. Accordingly, his challenge on such grounds is rejected.

*Neaves*, 2015 WL 4198776, at *2-5.

An instruction under *Moore* "is comparable to the *Allen* charge sometimes given during

deliberations in federal proceedings." *Bell v. Uribe*, 748 F.3d 857, 861 n.2 (9th Cir. 2014)

(citing *Allen v. United States*, 164 U.S. 492, 501-02 (1896)). "Clearly established federal law

provides that '[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced

verdict of that body.'" *Parker v. Small*, 665 F.3d 1143, 1147 (9th Cir. 2011) (quoting

*Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988)). "A supplemental jury charge to encourage a

deadlocked jury to try to reach a verdict is not coercive per se." *Id.* at 1147. When faced with a

claim of jury coercion, a reviewing court must "consider the supplemental charge given by the

trial court in its context and under all the circumstances." *Lowenfield*, 484 U.S. at 237 (citation

and internal quotation marks omitted). The court may consider the form of the instruction, the

length of time the jury deliberated after receiving the instruction in relation to the total time of

deliberation and any other indicia of coerciveness. *See United States v. Berger*, 473 F.3d 1080,

1090 (9th Cir. 2007). The ultimate question is "whether the trial judge's inquiry would be likely

to coerce certain jurors into relinquishing their views in favor of reaching a unanimous

decision." *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983).

Upon independent review of the record and in light of these factors, the Court concludes

that the Court of Appeal's rejection of Neaves' claim was neither contrary to, nor an

unreasonable application of, *Allen* and its progeny. As the Court of Appeal properly noted in

rejecting Neaves' claim on direct appeal, there is no Ninth Circuit authority requiring that a jury

be informed of the possibility of a hung jury, and there is simply no support for the contention

that a court's failure to so inform the jury weighs in favor of finding coercion.

Here, the state court considered the supplemental charge in its context and under all the

circumstances, as required by *Lowenfield*. Notably, the supplemental charge at issue here is

distinct from the sanctioned federal *Allen* charge because it did not speak specifically to the

minority jurors. Indeed, there could be no implied pressure on the minority jurors here because

the trial court did not poll the jurors. The language of the supplemental challenge also contained

the conditional language that the jurors should arrive at a verdict, if each juror could do so without violence to his or her individual judgment.  Nor does the record support that the jury abruptly and without due consideration reached a verdict after the charge.  The record reflects that, soon after receiving the supplemental charge, the jury requested Detective Martine's testimony, and, roughly 24 hours later, sent a note that it had reached a verdict.  The state court reasonably determined that the supplemental charge here, in context and under all circumstances, was not coercive.  *Cf. Rodriguez v. Marshall*, 125 F.3d 739, 750 (9th Cir. 1997) (no coercion where judge not only advised jurors not to surrender their sincerely held beliefs but 1) made no comment on numerical split, 2) did not know whether the majority favored conviction or acquittal, and 3) did not know the identity of the holdouts), *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815 (9th Cir. 2003).  Neaves is therefore not entitled to relief on this claim.

Ground 2.      Evidentiary Error

Neaves next contends that the trial court erred in admitting evidence of his prior uncharged sexual offenses against Nathan B. and Jessica J.  Under California Evidence Code § 1108, the prosecution may prove a defendant's propensity to commit sex offenses by offering evidence that he has committed other sex crimes.  It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible.  *See* CAL. EVID. CODE §§ 1101(a), 1108(a).  The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Section 1108 is analogous to Federal Rule of Evidence 413, which provides

that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." FED. R. EVID. 413(a).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009). California employs a similar rule. *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Neaves argues, as he did on direct appeal, that the trial court erred in its balancing under Evidence Code § 352 because the inflammatory and prejudicial nature of the evidence far outweighed its probative value given the remoteness and dissimilarity of the other conduct. But to the extent Neaves argues that the trial court erred under state law, he cannot prevail on such claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68.

Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108. *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the state courts' rejection of this claim was not contrary to, or an unreasonable application of,

any clearly established Federal law as determined by the United States Supreme Court, Neaves' challenge must fail.

In any event, the Court of Appeal's § 352 analysis is well supported by the record. The appellate court reasonably determined that the probative value of the evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. As that court explained:

> Nathan B. was nine years old when [Neaves] sodomized him in the shower and Jessica J. was 13 years old when [Neaves] forcefully pulled her into a bathroom and tried to put her hand down his pants to touch his penis. These acts are a far cry from "roughhousing between brothers" and "common teenage behavior which is not even criminal"; instead, the acts constitute, at the least, felony conduct under section 288, subdivision (a), lewd and lascivious conduct with a child under age of 14 years. And since section 288 is an offense specified in Evidence Code section 1108, subdivision (d)(1)(A), evidence of [Neaves'] prior commission of such act or acts is "uniquely probative," and therefore highly relevant as to his commission of the presently charged acts.
> As to [Neaves'] claim that the jurors were inclined to convict him out of revenge for the lack of punishment for the uncharged offenses, this is not a reasonable possibility given [Neaves'] admission that the evidence of the uncharged acts was "not particularly inflammatory" and that the jury acquitted him of the other two felony charges.

*Neaves*, 2015 WL 4198776, at *6.

For these reasons, the Court of Appeal's rejection of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law. Neaves is thus not entitled to relief on this claim.

Ground 3.    Prosecutorial Misconduct

Neaves additionally contends that the prosecution committed misconduct in a variety of ways. A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S.

637, 643 (1974)); *see Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)). Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—*i.e.*, that absent the alleged impropriety, the verdict probably would have been different.

Neaves first faults the prosecution for referring to uncharged prior allegations from Neaves' juvenile history. The Superior Court denied the claim on habeas review, concluding that it was barred from collateral review under *In re Waltreus*, 397 P.2d 1001 (Cal. 1965), because it was raised and rejected on direct appeal.

As an initial matter, because the superior court declined to hear this claim on habeas review, consideration of the claim is procedurally barred here. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). It is firmly established under California law that "habeas corpus will not lie as a substitute for an appeal . . . nor as a second appeal." *In re Harris*, 855 P.2d 391, 396 (Cal. 1993) (citing *In re Foss*, 519 P.2d 1073 (Cal. 1974); *In re Terry*, 484 P.2d 1375 (Cal. 1971); *In re Waltreus*, 397 P.2d 1001 (Cal. 1965); *In re Spears*, 204 Cal. Rptr. 333 (Cal. Ct. App. 1984); *In re Wagner*, 173 Cal. Rptr. 766 (Cal. Ct. App. 1981)).

Moreover, even if the claim were properly before this Court, it nonetheless is without merit. *See Flournoy v. Small*, 681 F.3d 1000, 1004 n. 1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we

are not required to do so when a petition clearly fails on the merits."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar."). Because, as discussed *infra*, the trial court did not err in admitting the evidence, the prosecution did not commit misconduct by commenting upon it. Neaves is therefore not entitled to relief on this claim in any event.

Neaves additionally contends that the prosecutor failed to collect and preserve evidence. According to Neaves, DNA testing should have been done on panties found on a bathroom floor, which he believes would have exonerated him. The California Superior Court rejected this claim on direct appeal as follows:

> Petitioner . . . may not obtain habeas corpus relief on mere speculation of what evidence the panties might have produced, had DNA testing been done. Rather, on habeas corpus, petitioner has the burden of presenting evidence to support a claim, including that of innocence such as petitioner would like to prove. Regardless, any evidence from the panties would not have been likely to have changed the outcome of the trial, as petitioner was acquitted of the Penal Code § 288.7(b) digital penetration and Penal Code § 288(a) lewd act charges . . . . As the jury found guilt only on the Penal Code § 288.7(b) oral copulation charge, it necessarily rejected any action regarding her panties area, thus a showing regarding DNA or lack of DNA on the panties would not have assisted petitioner in defending against the only charge of which he was convicted, the oral copulation charge. As such, petitioner's claim fails.

Docket No. 1 at 69-70 (citations omitted).

It is a violation of a criminal defendant's right to due process when law enforcement agencies fail to preserve evidence that "possess[es] an exculpatory value that was apparent before the evidence was destroyed and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably attainable means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Due process only requires preservation of "evidence that might be

expected to play a significant role in the suspect's defense." *Id.* at 488. Furthermore, the destruction of potentially exculpatory evidence does not violate the Constitution unless the evidence was destroyed in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). As the Superior Court reasonably concluded, even if the panties had been tested and found not to contain Neaves' DNA, such evidence would not have exonerated him on the oral copulation charge. The Superior Court's rejection of this claim is both fully supported by the record and consistent with *Trombetta* and *Youngblood*. Neaves is thus not entitled to relief on this argument either.

Finally, Neaves claims that the prosecutor knowingly used perjured evidence. According to Neaves, the "prosecutor was given copies of the police report and investigation reports that showed that none of the D.A.'s witnesses were telling the truth. Each and every witness of the D.A. lied in their reports and were allowed to lie on the stand." "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not

17

support Neaves' contention that the prosecution knowingly introduced perjured testimony. Indeed, Neaves has failed to show by way of admissible, competent evidence that any prosecution witness perjured himself or herself at trial. This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof). Petitioner's bare and conclusory allegations are manifestly insufficient to warrant habeas corpus relief. *Jones v. Gomez*, 66 F.3d 199, 204–05 & n. 1 (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Ground 4.    Ineffective Assistance of Counsel

Neaves further contends that trial counsel rendered ineffective assistance by failing to: 1) conduct an adequate pretrial investigation; 2) locate, question, and subpoena a doctor who treated the victim; 3) investigate a "main defense witness;" 4) obtain copies of the victim's medical exam; and 5) retain an independent medical expert. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Neaves must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Neaves' claims fail to satisfy either of the *Strickland* prongs. With regards to his claims that counsel failed to perform an adequate pretrial investigation, Neaves fails to specifically identify what his counsel could have discovered had he conducted a more thorough investigation or obtained the evidence at issue. The Ninth Circuit has routinely rejected ineffective assistance of counsel claims based on a failure to investigate where the petitioner has not identified the specific exculpatory evidence that should have been presented. *See, e.g.*, *Ceja v. Stewart*, 97

19

F.3d 1246, 1255 (9th Cir. 1996) (petitioner failed "to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds"); *Hendricks v. Calderson*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the *Strickland* test.").

Nor can Neaves prevail on his claim that counsel should have retained an independent medical expert. The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony. Here, however, Neaves provides no support for his contention that a medical expert would have uncovered useful evidence or testified on his behalf. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that an expert would testify on petitioner's behalf is insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Neaves is thus not entitled to relief on any argument advanced in support of his ineffective assistance claim.

## V. CONCLUSION AND ORDER

Neaves is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 22, 2019.

         /s/James K. Singleton, Jr.
         JAMES K. SINGLETON, JR.
         Senior United States District Judge